United States District Court
Southern District of Texas
**ENTERED**
September 06, 2024
Nathan Ochsner, Clerk

cUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN WEST, *et al.*,<br>Plaintiffs, | §<br>§<br>§ | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-00604 |
| | §<br>§ | |
| CITY OF SPLENDORA, *et al.*,<br>Defendants. | §<br>§ | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss filed by Defendant Roxana Castillo. Having carefully reviewed the motion, response, and applicable law, the Court **GRANTS** the motion.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

For purposes of the Court's consideration of the pending motion, the following facts alleged in Plaintiffs' third amended complaint are taken as true. (Dkt. 34-1). Kevin West and Rebecca Martin, who are married, live in Splendora, Texas. On February 10, 2021, they were driving on a public road when they encountered Castillo, who is currently a Montgomery County deputy and "may not [sic] have been working for the City of Splendora at the time." Castillo was driving a vehicle in the opposite direction and in the

[1] The Court previously dismissed the City of Splendora, Texas, police officer Henri Mestizo, and police chief Henry Wieghat in a separate opinion. (Dkt. 28).

middle of the two-lane road (the "driving incident"). The vehicle "bore the markings or insignia of a law enforcement agency," and its emergency lights and siren were not on. West had to "veer onto the shoulder, subgrade, and/or grassy embankment" next to the road and "almost into a ditch" to avoid her. Martin lodged a complaint with the City of Splendora the same day though the complaint "may have been in vain" as Castillo "may instead have been working for Montgomery County."

The next day, Castillo, who "knew that Plaintiffs had made a complaint about her," "showed up to assist" police officer Henri Mestizo when he called for backup in a traffic stop that resulted in Plaintiffs being handcuffed and West being taken into custody. Castillo was one of "approximately nine law enforcement officers" who arrived after Mestizo called for backup. Plaintiffs allege that Castillo "encouraged other officers on scene to accost Plaintiffs and helped make sure Plaintiff West was arrested and charged with a bogus crime." Body camera video shows Mestizo and Castillo "discussing how the Plaintiffs had lodged complaints against Castillo." Mestizo's body camera footage from the traffic stop captured Castillo saying, "And apparently they went and filed a complaint on me for something." The charges against West were eventually dismissed.

Plaintiffs' third amended complaint asserts the following claims[2] against Castillo in her personal capacity:

---

[2] Plaintiff appeared to bring a Fourth Amendment excessive-force claim against Castillo (*see, e.g.*, Dkt. 34-1 at 10, 15–16). Plaintiffs, however, expressly disclaimed an excessive-force claim in their response. (Dkt. 51 at 6 ("Plaintiffs' live complaint has no claims of excessive force against Castillo.")).

- Violating Plaintiffs' right to remain free from unlawful searches and seizures under the Fourth Amendment (Dkt. 34-1 at 10);
- Violating West's "Fourth Amendment right to remain free from false arrest and unfound prosecution" (Dkt. 34-1 at 17);
- Violating Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment (Dkt. 34-1 at 10, 17);
- "[R]etaliation and conspiracy to violate the Plaintiffs' constitutional rights by virtue of false arrest" (Dkt. 34-1 at 15); and
- Violating Plaintiff's First Amendment right to free speech (Dkt. 34-1 at 10, 17);

In the pending motion, Castillo argues that she is entitled to the dismissal of Plaintiffs' constitutional claims because Plaintiffs have failed to state an actionable claim against her for retaliation and conspiracy related to the alleged false arrest.[3] The Court considers these arguments below.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

[3] Castillo also argues that Plaintiffs' claims are time-barred by statute of limitations (Dkt. 50 at 5–6), and Plaintiffs request that the limitations period be tolled (Dkt. 51 at 4–6). Because the Court dismisses the claims against Castillo on other grounds, it need not reach this argument.

R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id.*

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In conducting this analysis, the Court does not

consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**II. 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred."' *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To establish § 1983 liability, plaintiff must prove that she suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). Plaintiff must also show that the constitutional or statutory deprivation she suffered was intentional or due to deliberate indifference and not the result of mere negligence. *Id.* (citing *Baker*, 443 U.S. at 146).

**A. Section 1983 Suits Against Individuals and Qualified Immunity**

The doctrine of qualified immunity protects government officers from civil liability in their individual capacities if their conduct does not violate clearly established federal statutory or constitutional law of which a reasonable person would have known. *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) ("The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."). Once raised as a defense, plaintiff has the burden to demonstrate that qualified immunity should be pierced. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). This inquiry requires a two-prong analysis, in which the court determines (1) whether the official violated a statutory or constitutional right, and (2) whether the unlawfulness of the official's conduct was "clearly established" at that time. *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). When a defendant asserts a qualified immunity defense in a motion to dismiss, the district court must "carefully scrutinize the complaint . . . because qualified immunity means immunity from having to stand trial, not simply immunity from monetary liability." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (quotation marks omitted).

A right is "clearly established" only where pre-existing law "dictate[s], that is truly compel[s] (not just suggest[s] or allow[s] or raise[s] a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in these circumstances." *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012).

Even if a defendant's conduct violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity unless "all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights." *Carroll v. Ellington,* 800 F. 3d 154, 169 (5th Cir. 2015).

The burden is on the plaintiff to demonstrate the inapplicability of the qualified immunity defense. *Id.* A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* The plaintiff "must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan*, 659 F.3d at 371 (quotation marks omitted). Courts have discretion to decide which prong of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## ANALYSIS

The Court finds that Castillo is entitled to qualified immunity from the claims brought against her and thus entitled to dismissal of those claims.

### I. Castillo is entitled to dismissal of Plaintiffs' claim regarding the driving incident.

Plaintiffs allege that Castillo's "use of her police car constituted a violation" of their right to remain free from "unlawful searches and seizures under the Fourth Amendment."

(Dkt. 34-1 at 10). There are no allegations in the Complaint about a search, however, and thus the Court analyzes whether an unreasonable seizure occurred.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "The Fourth Amendment does not forbid all or even most seizures—only unreasonable ones." *Torres v. Madrid*, 592 U.S. 306, 325 (2021). Seizure of a "person" "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Id.* at 311 (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968)) (alteration in original). "A seizure [by force] requires the use of force *with intent to restrain*." *Torres*, 592 U.S. at 317; *id.* at 325 ("[T]he application of physical force to the body of a person with intent to restrain is a seizure."). "Accidental force will not qualify. Nor will force intentionally applied for some other purpose satisfy this rule." *Id.* at 317 (citation omitted). "[T]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain." *Id.* "Nor does the seizure depend on the subjective perceptions of the seized person." *Id.* "Unlike a seizure by force, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement." *Id.* at 322.

Taking the Plaintiffs' allegations as true, there was no seizure, either through physical force or show of authority. There are no allegations that Plaintiff voluntarily submitted to Castillo, and Castillo's driving past them did not terminate their freedom of movement. On the contrary, Plaintiffs drove "into the shoulder" "to avoid [Castillo's

reckless driving" and then "regained control" of their vehicle. (Dkt. 34-1 at 9). There are no allegations the Plaintiffs ever even stopped driving. There are also no allegations that Castillo applied any physical force on them with intent to restrain them. Indeed, the conduct Plaintiffs challenge—reckless driving—objectively manifests no intent to restrain.

Even assuming Castillo's actions violated Plaintiffs' Fourth Amendment rights, Plaintiffs had an additional burden—once Castillo raised a qualified immunity defense in her motion to dismiss—to demonstrate that the rights that were violated were clearly established at the time of the offense. *Morgan*, 659 F.3d at 371. Here, that requires Plaintiffs to demonstrate that driving the way Castillo allegedly did, which did not result in Castillo's vehicle ever making contact with Plaintiffs' vehicle, amounted to a violation of clearly established law. Plaintiffs' response to Castillo's motion to dismiss fails to demonstrate this.

When attempting to show that a right was clearly established at the time of the challenged conduct, "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 310 (5th Cir. 2018) (quotation marks omitted) ("Plaintiff . . . cited nary a pre-existing or precedential case. That alone dooms his case here."). The inquiry "must be undertaken in light of the specific context of the particular case, not as a broad general proposition." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (brackets and ellipsis omitted). "Although qualified immunity does not require a case in point, existing precedent must have placed the statutory or constitutional question beyond debate[,]" such that "every

reasonable official would understand that what she is doing violates that right." *Id.* (brackets and quotation marks omitted).

Plaintiffs initially cited five cases in support of their argument that Castillo's conduct violated Plaintiffs' clearly established rights: *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1305–06 (11th Cir. 2009); *Johnson v. District of Columbia*, 528 F.3d 969, 974–75 (D.C. Cir. 2008); *Smith v. Wade*, 461 U.S. 30, 45–48 (1983); and *Powell v. Alexander*, 391 F.3d 1, 19 (1st Cir. 2004) (Dkt. 34-1 at 16–17). The cases, all of which feature factual scenarios that widely diverge from the one here, do not support Plaintiffs' argument that Castillo violated their clearly established rights. In their response to Castillo's motion to dismiss, Plaintiffs do not even discuss this claim, let alone cite a case supporting their argument.

Accordingly, Castillo is entitled to qualified immunity as to this claim.

## II. Castillo is entitled to dismissal of Plaintiffs' claims regarding the traffic stop.

### i. Castillo's Actions Are Considered Separately

Although the Complaint contains allegations as to Mestizo and Castillo, the Court "examine[s] the actions of defendants individually in the qualified immunity context." *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (collecting cases); *id.* (holding that the "district court erred in considering the officers' actions together" and "instruct[ing] the court to consider the officers['] actions separately on remand"); *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020) (explaining that the court will

"consider[] each officer's actions independently"); *id.* at 343 n.114 ("Again, we consider the actions of each officer individually."). "Personal involvement is an essential element of a civil rights cause of action." *Young v. Sailor*, 998 F.2d 1014 (5th Cir. 1993).

While Plaintiffs allege that Mestizo initiated the traffic stop, screamed at Martin to stay in the vehicle, slammed West onto the ground, and charged West with "bogus crimes," they allege that Castillo only "showed up to assist" Mestizo along with other law enforcement officers after Mestizo called for backup. Indeed, the Complaint only contains three allegations about Castillo's conduct at the scene: (1) she mentioned a complaint made against her; (2) she "assisted in the arrest of Plaintiff West and the detention of Plaintiff Martin"; and (3) she "encouraged other officers on scene to accost Plaintiffs and helped make sure Plaintiff West was arrested and charged with a bogus crime."

ii. West's Fourth Amendment False Arrest Claim

To prevail on a Section 1983 false arrest claim, West must show that there was no probable cause to arrest him. *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004). The defendant in a Section 1983 false arrest claim "is entitled to qualified immunity if a reasonable officer in [the defendant's] position could have believed that, in light of the totality of the facts and circumstances of which [the defendant] was aware, there was a fair probability that [the plaintiff] had committed or was committing an offense." *Id.*; *see, e.g.*, *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) ("[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest

provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed."). "[T]here must not even arguably be probable cause for the ... arrest for immunity to be lost." *Haggerty*, 391 F.3d 653, 656 (5th Cir. 2004) (alteration and omission in original). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.* The Court must consider "each deputy's individual role in the arrest when determining whether he [i]s eligible for qualified immunity." *Ibarra v. Harris Cnty. Texas*, 243 F. App'x 830, 835 (5th Cir. 2007).

The Complaint contains no allegations that Castillo participated in arresting West or charging him apart from the conclusory allegations that she "encouraged" other officers to "accost" Plaintiffs, "assisted" in West's arrest, and "helped make sure" West was arrested and charged. There are no allegations about what the "assistance" or "help" entailed. Indeed, the allegation that she "encouraged other[s]" to accost Plaintiffs suggests she never came into contact with Plaintiffs at all. There are no allegations that she herself initiated the stop, accosted West, talked to West, made the decision to arrest West, touched West, handcuffed West, charged West, or otherwise participated in West's arrest or interacted with him at all. Indeed, the Complaint expressly states that Mestizo—not Castillo—initiated the traffic stop, slammed West onto the ground, and charged West with "bogus crimes." "It is necessary to specify the personal involvement of each defendant in a cause of action under § 1983," and Plaintiffs have not done so here. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Plaintiffs have thus not "plead[ed] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, the Court finds that West has failed to overcome the first prong of Castillo's qualified immunity defense—*i.e.*, that Castillo violated West's constitutional rights—and Castillo is entitled to qualified immunity on this claim.

iii. West's Fourth Amendment Unfound Prosecution Claim

To prevail on a Fourth Amendment malicious prosecution[4] claim under § 1983, West must allege "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024).

Even assuming West has properly alleged a Fourth Amendment malicious prosecution claim (and thus could satisfy the first prong of qualified immunity), his claim fails on the second prong. From 2003 to 2021, the Fifth Circuit "explicitly denied the possibility of a constitutional malicious prosecution claim." *Espinal*, 96 F.4th at 748. West was arrested in 2021, "when the constitutional malicious prosecution tort did not exist in our circuit. So, [Castillo] could not possibly have violated clearly established law at the

[4] The Court could not locate a case in the Fifth Circuit evaluating a Fourth Amendment "unfound prosecution" claim. (Dkt. 34-1 at 17). The Court assumes Plaintiffs intended to bring a Fourth Amendment malicious prosecution claim.

time." *Id.* at 749 (citation omitted). Accordingly, Castillo is entitled to qualified immunity as to West's malicious prosecution claim.

iv. Plaintiffs' Eighth Amendment Claim

Though Plaintiffs recite in the "Claims" section of their Complaint that "Plaintiffs had a clearly-established constitutional right to be free from cruel and unusual punishment" and cite the Eighth Amendment, they identify "[n]o Eighth Amendment cruel or unusual punishment . . . that can be attributed to the actions of [Castillo]." *Nalls v. LaSalle*, 568 F. App'x 303, 307 (5th Cir. 2014) (affirming district court where plaintiff's "pleadings amount[ed] to the kind of 'naked assertion[s]' devoid of the requisite 'factual enhancement' necessary to state a sufficient claim" (quoting *Iqbal*, 556 U.S. at 678) (second alteration in original)). As explained above, the Complaint contains only conclusory allegations as to Castillo's actions, and Plaintiffs have failed to specify Castillo's personal involvement in West's arrest or Martin's detention. *See Murphy*, 950 F.2d at 292. Accordingly, Plaintiffs have failed to overcome the first prong of Castillo's qualified immunity defense, and Castillo is entitled to qualified immunity on this claim.

v. Plaintiffs' Conspiracy Claim

"To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Bevill v. Fletcher*, 26 F.4th 270, 274–75 (5th Cir. 2022). A "civil conspiracy is a derivative claim that depends on some underlying wrong." *Mayfield v. Butler Snow, L.L.P.*, 75 F.4th 494, 501 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 810, 218 L. Ed. 2d 24 (2024) (plaintiffs could

not proceed on civil conspiracy claim to the extent that claim relied on their federal § 1983 claim because the § 1983 claim was correctly dismissed). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." *Brown v. Tull*, 218 F.3d 743 (5th Cir. 2000) (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)).

Plaintiffs here claim a "conspiracy to violate the Plaintiffs' constitutional rights by virtue of false arrest." (Dkt. 34-1 at 15). As the Court is dismissing West's Fourth Amendment false arrest claim, West cannot proceed with a civil conspiracy claim. Martin also cannot proceed with this claim because she was not arrested and did not bring a false arrest claim. In any case, Plaintiffs have not alleged that Castillo had an agreement with anyone to illegally arrest West. *See Hurlston v. City of Princeton*, 672 F. App'x 335, 341 (5th Cir. 2016) ("[T]o establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." (quoting *Arsenaux*, 726 F.2d at 1024)). The single allegation in the Complaint that hints at an agreement is that the "officers attempted . . . to cover up each other's misdeeds with . . . [t]he arrest of Kevin West." (Dkt. 34-1 at 13). This is a conclusory allegation, and the Complaint does not otherwise contain any specific allegation of fact tending to show a prior agreement. *See Arsenaux*, 726 F.2d at 1023–24 (no error in finding that judge was entitled to immunity on conspiracy charge where the "general charges" were "conclusory" and "no specific allegation of facts tending to show a prior agreement ha[d] been made"). Plaintiffs have not adequately alleged a conspiracy claim, and Castillo is entitled to qualified immunity on this claim.

vi. Plaintiffs' Retaliation Claim

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Nieves*, 587 U.S. at 398 (internal quotation marks omitted). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.' It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 398–399 (citation omitted); *see Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."). In the case of retaliatory arrest and retaliatory prosecution claims, plaintiff must establish "the absence of probable cause," and if he does so, then he must "show that the retaliation was a substantial or motivating factor" behind the arrest or prosecution. *Nieves*, 587 U.S. at 404; *Lozman v. Riviera Beach*, 585 U.S. 87, 97 (2018).

Plaintiffs claim Castillo is "liable for retaliation . . . by virtue of false arrest" and that she "help[ed] to get Plaintiff West charged with a crime in retaliation for the Plaintiffs complaining about Defendant Castillo to her superiors/supervisors at the Montgomery County Constable's Office."[5] (Dkt. 34-1 at 15–16). Martin's retaliation claim fails at the outset as Plaintiffs do not allege that she was arrested or charged. West's retaliation claim also fails for many reasons. First, even assuming West had alleged adequately a lack of probable cause, he has failed to allege that Castillo took any "adverse action" against him; as explained above, the Complaint contains only conclusory allegations that Castillo participated in arresting West or charging him. Second, even assuming West could show Castillo participated in arresting or charging him, he has failed to allege Castillo had "retaliatory animus." Indeed, the only allegation the Complaint contains in this direction is that Castillo "knew that Plaintiffs had made a complaint about her" when she arrived at the traffic stop in response to Mestizo's call for backup. (Dkt. 34-1 at 11). This allegation, standing alone, is insufficient to allege any subjective animus on Castillo's part. Third, even assuming West had adequately alleged retaliatory animus, West has failed to allege that Castillo's retaliatory animus was a factor in his arrest or charges, let alone a "substantial" or "motivating" factor. On the contrary, Plaintiffs allege that Mestizo initiated the traffic stop, not Castillo; Castillo only arrived as "backup." (Dkt. 35-1 at 11–12).

---

[5] The Complaint earlier states that Martin lodged a complaint with the City of Splendora (Dkt. 34-1 at 10), not the Montgomery County Constable's Office.

Accordingly, Castillo is entitled to qualified immunity on Plaintiffs' retaliation claim.

## III. Castillo is entitled to dismissal of Plaintiffs' other First Amendment claims.

To the extent Plaintiffs attempted to allege First Amendment violations apart from the retaliation claim, they have failed to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547.

Plaintiffs state that Castillo "violated the First Amendment by trying to silence Plaintiffs." (Dkt. 34-1 at 10). Plaintiffs do not elaborate on what "silence" means, and there are no allegations in the Complaint supporting this claim. Plaintiffs also argue in their response that they "made a First Amendment claim against Castillo for obfuscation and obstruction of Plaintiff's First Amendment Right to Complain about law enforcement who are public officials performing a public duty in a public place." (Dkt. 51 at 7). But there are no allegations in the Complaint about Castillo stopping or attempting to stop Plaintiffs from making complaints. Indeed, the Complaint expressly alleges that Martin was able to make a complaint following Plaintiffs' alleged encounter with Castillo on the road: "Martin lodged a complaint with the City that same day, complaining of the offending vehicle." (Dkt. 34-1 at 10). Castillo is thus entitled to qualified immunity on these claims.

## CONCLUSION

For the reasons stated above, Castillo's Motion to Dismiss (Dkt. 50) is **GRANTED**. Castillo is entitled to qualified immunity as to all the claims Plaintiffs have brought against her; those claims are **DISMISSED**.

SIGNED at Houston, Texas on September 6, 2024.

George C. Hanks Jr
GEORGE C. HANKS, JR
UNITED STATES DISTRICT JUDGE